The Honorable Doug Wood State Representative P.O. Box 7078 Sherwood, AR 72116
Dear Representative Wood:
This is in response to your request for an opinion on the following questions concerning the Vertac Superfund site in Jacksonville, Arkansas:
 1. Under the Federal Facilities Compliance Act (42 U.S.C. § 6961), are EPA and federal contractors engaged in hazardous waste activities at the Vertac site required to comply with both procedural and substantive state and federal law and regulations (including permit requirements and public participation requirements) governing hazardous waste management? Or does federal law preempt compliance with state regulations?
 2. Under state law standards (DPCE Regulation No. 23 § 3), is the incinerator under contract with the EPA required to meet a 99.9999 percent destruction and removal efficiency (DRE) on dioxin waste as it is incinerated on a day-to-day basis?
Your first question requires interpretation of 42 U.S.C. § 6961, wherein it states:
 Each department, agency, and instrumentality of the executive and judicial branches of the Federal Government (1) having jurisdiction over any solid waste management facility or disposal site, or (2) engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any requirement for permits or reporting or any provisions or injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal and management in the same manner, and to the same extent, as any person is subject to such requirements, including the payment of reasonable service charges.
42 U.S.C.S. § 6961(a) (1994).
The question, therefore, under the first part of your inquiry, is whether the Environmental Protection Agency (EPA), in connection with the Vertac site, has jurisdiction over a "solid waste management facility or disposal site" or is "engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste" within the meaning of 42 U.S.C.S. § 6961.
This is not a question of state law, but rather requires interpretation of the federal Code section. I cannot in the context of a state Attorney General opinion undertake the required analysis of this provision. I lack the resources and the authority to address exclusively federal law questions. I must suggest, therefore, that the question be referred to either the office of the U.S. Attorney or the EPA.
With regard to the second part of your first question, I am uncertain what "federal law" you are referring to. In any event, however, the question requires an initial determination regarding the applicability of42 U.S.C.S. § 6961. And, as stated above, this federal law question is not within the scope of an Attorney General opinion.
With regard to your second question, it is my opinion that a clear answer can only be provided through the judicial process. Until a court is squarely faced with the issue, a conclusive determination is impossible.
As you note, the Arkansas Hazardous Waste Management Code, Chapter 2, Section 3, adopts, inter alia, 40 C.F.R. § 264.343. The current position of the EPA and the Arkansas Department of Pollution Control and Ecology (ADPCE) with regard to this regulation, as revealed in the case ofArkansas Peace Center v. Dept. of Pollution Control, 999 F.2d 1212 (8th Cir. 1993), is that the so-called "six nines" requirement (99.9999 percent destruction and removal efficiency ("DRE")) does not apply to the day-to-day incineration of dioxin. This office, in its trial brief filed with the district court in Arkansas Peace Center, pointed out the historical inconsistencies in the EPA's interpretation of40 C.F.R. § 264.343. See Arkansas Attorney General's Trial Brief at 5-9,Arkansas Peace Center v. Arkansas Dept. of Pollution Control Ecology,
No. LR-C-92-684 (E.D. Ark. 1993). Although the district court in ArkansasPeace Center found that the regulation requires a DRE of 99.9999% for dioxin (Id., Order at 2 (E.D. Ark. Feb. 16, 1993)), the appeals court dismissed for lack of subject matter jurisdiction. 999 F.2d at 1218. The Eighth Circuit, in dicta, expressed its view that the "six nines" DRE test for dioxin is not required for a trial burn. Id. at 1218. But because the court did not specifically address the issue, uncertainty remains with respect to day-to-day incineration.
I am therefore unable to provide a conclusive response to your second question, in light of this judicial and regulatory background. An administrative agency's interpretation of its own regulations is, of course, accorded great deference. See generally Dymond v. United StatesPostal Service, 670 F.2d 93 (8th Cir. 1982). Yet it seems clear in this instance that a conclusive interpretation of the state standards, via the federal regulations, remains with the courts.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh